# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

———————————

ROBERT ARIAS,

Plaintiff-Appellant,

v.

NOAH A. HERZON; JUAN INFANTE; TY KURCHARSKI;
CHRISTOPHER DAY; ADALBERTO GARCIA; MICHAEL BERNARD,

Defendants-Appellees

US GOVERNMENT; US DRUG ENFORCEMENT ADMINISTRATION,

Defendants.

———————————

On Appeal from the United States District Court
for the District of New Hampshire

———————————

## PETITION FOR REHEARING AND REHEARING EN BANC

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIN CREEGAN
  *United States Attorney*

MELISSA N. PATTERSON
JAYNIE LILLEY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7321*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3542*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ...............................................................................1

STATEMENT .................................................................................................................2

ARGUMENT ..................................................................................................................5

I.      Plaintiff's Claim Would Extend *Bivens* into a New Context. ..................................5

      A.      Executing an Arrest Warrant Presents a New Context from the Warrantless Search and Arrest in *Bivens*. .......................................................6

      B.      Effectuating an Arrest in a Public Parking Lot Presents a New Context from the Search and Arrest in the Plaintiff's Home in *Bivens*. ..............................................................................................................9

II.     The Majority's Expansion of *Bivens* Warrants Rehearing En Banc..................... 12

CONCLUSION ............................................................................................................. 16

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** <span style="float:right">**Page(s)**</span>

*Annappareddy v. Pascale,*
   996 F.3d 120 (4th Cir. 2021) ............................................. 13

*Arias v. Herzon,*
   680 F. Supp. 3d 61 (D.N.H. 2023) .................................... 2

*Bannon v. Godin,*
   99 F.4th 63 (1st Cir. 2024) ............................................. 10

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
   403 U.S. 388 (1971) ...................................................... 1, 7

*Byrd v. Lamb,*
   990 F.3d 879 (5th Cir. 2021) ...................................... 2, 4, 14

*Cain v. Rinehart,*
   No. 22-1893, 2023 WL 6439438 (6th Cir. July 25, 2023) .................... 8, 13

*Cantú v. Moody,*
   933 F.3d 414 (5th Cir. 2019) .............................................13

*Egbert v. Boule,*
   596 U.S. 482 (2022) .............................. 2, 7, 9, 11, 12, 15, 16

*Graham v. Connor,*
   490 U.S. 386 (1989) ...................................................... 5, 10

*Hernandez v. Mesa,*
   589 U.S. 93 (2020) .................................................... 4, 6, 12

*Hicks v. Ferreyra,*
   64 F.4th 156 (4th Cir. 2023) ..............................................14

*Logsdon v. U.S. Marshal Serv.,*
   91 F.4th 1352 (10th Cir. 2024) ...................................... 8, 13, 14

*Mejia v. Miller,*
   61 F.4th 663 (9th Cir. 2023) ....................................... 2, 4, 14

*Oliva v. Nivar,*
   973 F.3d 438 (5th Cir. 2020) ........................................ 14

*Orellana v. Godec,*
   145 F.4th 516 (4th Cir. 2025) .................................................................. 2, 8, 13

*Payton v. New York,*
   445 U.S. 573 (1980) .................................................................................... 6

*Quinones-Pimentel v. Cannon,*
   85 F.4th 63 (1st Cir. 2023) ......................................................................... 13

*Snowden v. Henning,*
   72 F.4th 237 (7th Cir. 2023) ............................................................... 4, 13, 14

*Ziglar v. Abbasi,*
   582 U.S. 120 (2017) ....................................................... 1, 6, 7, 8, 12, 15

**Rules:**

Fed. R. App. P. 40(b)(2) ................................................................................ 2

Fed. R. App. P. 40(b)(2)(C) ......................................................................... 12

Fed. R. Crim. P. 41(e)(2)(A) ......................................................................... 7

## INTRODUCTION AND SUMMARY

The Supreme Court's recent decisions have repeatedly made clear that implying new constitutional damages actions against federal employees under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), is "disfavored" and impinges on the separation of powers. *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017). The "decision to recognize a damages remedy requires an assessment of [the remedy's] impact on governmental operations systemwide," and Congress is "better position[ed]" than the judiciary "to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. When considering whether to extend the damages remedy in *Bivens* beyond its recognized context, courts must first decide whether the case presents meaningful differences from *Bivens* and would thus further intrude on the separation of powers. *Id.*

The panel majority here failed to adhere to this instruction, rejecting the important law-enforcement and separation-of-powers interests involved in executing an arrest warrant in a public location. The majority went well beyond the context in which *Bivens* itself recognized an implied damages remedy, intruding on Congress's role to determine in the first instance whether a damages remedy should be available in this new context.

The panel's decision stands in marked tension with the Supreme Court's recent *Bivens* jurisprudence, cannot be reconciled with the authoritative decisions of several other circuit courts of appeals, and presents questions of exceptional importance. *See*

Fed. R. App. P. 40(b)(2); *see, e.g.*, *Orellana v. Godec*, 145 F.4th 516, 525 (4th Cir. 2025);

*Mejia v. Miller*, 61 F.4th 663, 668 (9th Cir. 2023); *Byrd v. Lamb*, 990 F.3d 879, 882 (5th

Cir. 2021). We respectfully urge that the case be reheard en banc.

## STATEMENT

1. Plaintiff Robert Arias was arrested by 18 officers, including both federal

agents and local law enforcement officers assigned to a U.S. Drug Enforcement

Administration (DEA) task force, executing a warrant for plaintiff's arrest. *See Arias v.*

*Herzon*, 680 F. Supp. 3d 61, 63 (D.N.H. 2023).

Plaintiff was arrested in a shopping center parking lot while seated in the

passenger seat of a vehicle. *Arias*, 680 F. Supp. 3d at 64. Several officers blocked the

car with their vehicles, approached with weapons drawn, and attempted to arrest

plaintiff. *Id.* While the officers submitted written testimony that the arrest was quick

and nonviolent, plaintiff submitted an affidavit that the officers pulled him from the

car, stepped on him after he was handcuffed, and hit his head against the ground,

causing him lose control of his bladder and lose consciousness. *Id.*

2. Plaintiff filed suit, alleging that DEA task force officers violated his Fourth

Amendment rights by using excessive force.

After the Supreme Court's decision in *Egbert*, the district court granted

summary judgment to defendants, concluding as relevant here that there was no *Bivens*

remedy for plaintiff's excessive-force claims. *Arias*, 680 F. Supp. 3d at 69 (citing

*Egbert v. Boule*, 596 U.S. 482, 493 (2022)).

3. A divided panel of this Court reversed the district court's conclusion that a *Bivens* remedy was not available for the excessive-force claims. The majority concluded that plaintiff's excessive-force claims arose in the same context as *Bivens*, reasoning that neither the possession of a warrant nor the location of the arrest in a public place instead of a private home presented a new context from *Bivens*.

First, the majority concluded that officers executing a warrant were involved in the same conduct as the warrantless search and arrest in *Bivens*. The majority held that a warrant does not mean an excessive-force claim arises in a new context, while highlighting that a warrant might be a relevant distinction for a claim for an unreasonable search or false arrest. Majority 21-24 (citing cases). The majority observed that a warrant, issued by a neutral magistrate, is a different legal mandate from the warrantless search and use of force in *Bivens* itself. Acknowledging that the "right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof," the majority nevertheless concluded that arresting officers operating with or without an arrest warrant were not materially different, reasoning that an arrest warrant does not provide a mandate to use excessive force. Majority 22, 21-24 (quotation marks omitted).

Second, the majority held that an arrest in a public parking lot arose in the same context as a search and arrest in a suspect's home. The majority acknowledged that the location of an arrest can be meaningful for the new-context analysis but reasoned that the "parking lot of a privately owned shopping center" did "not trigger the kind

of acute separation of powers concerns that made the 'cross-border' context at issue in *Hernandez* meaningfully different from the context of *Bivens* itself." Majority 25 (citing *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)). The majority acknowledged that its conclusion departed from that of the Fifth Circuit and attempted to distinguish the Ninth Circuit's contrary conclusion regarding an excessive-force claim arising on public land. Majority 26-27 (first citing *Byrd*, 990 F.3d at 882; and then citing *Mejia*, 61 F.4th at 668). The majority argued that "the physical location being a parking lot on its own [does not bear] on the reasonableness of the level of force used, such that the involvement of this location risks 'alter[ing] the policy balance that initially justified the cause[] of action recognized in Bivens' as 'a separation-of-powers matter.'" Majority 27-28 (quoting *Snowden v. Henning*, 72 F.4th 237, 244, 247 (7th Cir. 2023)).[1]

Judge Lynch, dissenting in relevant part, would have held that plaintiff's excessive-force claim arose in a new context and that no *Bivens* remedy was available. Judge Lynch would have concluded that the arresting officers' possession of a warrant created a new context, explaining that unlike in *Bivens*, where "[t]here was no … determination that Bivens had committed a crime, [but] nonetheless officers entered

---

[1] The majority also rejected the district court's rationale that the 1988 amendment to the Inspector General Act establishing an administrative scheme for misconduct complaints within the Department of Justice created a new context. Majority 4, 28, 53. *But see* Dissent 62-63.

his home and tried to arrest him," the warrant represents a judicial determination of probable cause that plaintiff had committed a crime. Dissent 64.

Judge Lynch argued that the location of the arrest—a car parked in a public parking lot—was also a meaningful difference from *Bivens* because an excessive-force claim considers "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Dissent 64 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Relying on the strong Fourth Amendment interests in the home, Judge Lynch reasoned that "Congress could readily conclude arrests without warrant in the sanctity of the home are greater invasions of Fourth Amendment protections than attempts by law enforcement to effectuate arrest warrants in busy public mall parking lots." Dissent 65-66.

## ARGUMENT

The panel majority's decision extending *Bivens* liability to plaintiff's excessive-force claims for conduct involved in executing an arrest warrant in a public location presents a question of exceptional importance, fails to faithfully discharge the Supreme Court's instructions, and conflicts with decisions of other courts of appeals. This Court should grant rehearing en banc.

## I.  Plaintiff's Claim Would Extend *Bivens* into a New Context.

Under well-established principles, plaintiff's claim is meaningfully different than that the Supreme Court recognized in *Bivens* and thus arises in a new context. The

Supreme Court has explained that identifying a new context is a "broad" inquiry. *Hernandez*, 589 U.S. at 102. Thus, even if differences between plaintiff's claims and *Bivens* are "perhaps small, at least in practical terms," the inquiry is "easily satisfied." *Abbasi*, 582 U.S. at 147-49 ("[E]ven a modest extension is still an extension."). The new-context analysis requires a court to examine, among other things, whether the separation-of-powers factors at play in *Bivens* apply in the same way or, instead, whether the balance-of-policy concerns are sufficiently different that Congress might strike a different balance. *See, e.g.*, *Hernandez*, 589 U.S. at 103 (finding a "world of difference" between the conduct in *Bivens* and a "cross-border shooting," given the latter involved a "significant" "'risk of disruptive intrusion by the Judiciary into the functioning of other branches'" (quoting *Abbasi*, 582 U.S. at 140)). Plaintiff's claims arise in a new context because they present two meaningful differences from the claim in *Bivens*.

> **A.    Executing an Arrest Warrant Presents a New Context from the Warrantless Search and Arrest in *Bivens*.**

Damages claims against officers carrying out judicial commands present different separation-of-powers concerns than those in *Bivens*.

Officers executing a warrant operate under a different legal mandate than those involved in the warrantless search and arrest in *Bivens*. Searches inside a home without a warrant are presumptively unreasonable, *Payton v. New York*, 445 U.S. 573, 586 (1980), and the remedy devised in *Bivens* deterred the core harms of the warrantless

6

nature of that search and arrest. *See Bivens*, 403 U.S. at 389; *id.* at 392. In *Bivens*, the probable-cause determination for the arrest and the corresponding decision to use force were made by on-the-scene officers, rather than a magistrate. By contrast, an arrest pursuant to a warrant represents the determination of a neutral magistrate that an arrest is supported by probable cause, and any arrest made under that warrant thus occurs under a different legal mandate than the warrantless search and arrest in *Bivens*. *See* Fed. R. Crim. P. 41(e)(2)(A) (reflecting the requirement that an arrest warrant "must command" an officer to make an arrest).

The majority's contrary conclusion is based on the view that the impermissibility of using excessive force does not depend on whether an arrest occurred under or without a warrant. *See* Majority 22-23. But that reasoning wrongly focuses solely on the legal rights at issue, without accounting for other differences that can render a context new under the Supreme Court's instructions. *See, e.g., Egbert*, 596 U.S. at 494; *Abbasi*, 582 U.S. at 149. To begin, while an arrest warrant does not provide a legal mandate to use excessive force, even the panel acknowledged that *some* level of force is authorized by the arrest warrant, Majority 22. That consideration undermines the panel's reasoning that the "legal mandate" the officers operate under in these two scenarios does not differ. Majority 21-22. Appropriately applied, the new-context inquiry the Supreme Court has set out does not permit a court to focus myopically on whether the legal standard for excessive force is the same as that in *Bivens*; rather, the court should have asked whether implying a damages remedy against

7

officers operating under a different legal mandate and authorized to use different levels of force involved even "small" differences requiring "even a modest" extension of *Bivens*. *Abbasi*, 582 U.S. at 147-49. The majority erred in concluding that such an "easily satisfied" standard was not met here. *Id.*

Underscoring that conclusion is the majority's failure to recognize that holding officers personally liable for damages when they were judicially authorized to use force to carry out an arrest also intrudes more on the separation of powers than did *Bivens*. Executing an arrest warrant involves substantially more planning and coordination at the outset than officers' on-the-ground decisions to make a warrantless arrest. The execution of an arrest warrant may involve coordination with other law-enforcement agencies, including state entities, as it did here. *See also Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *3 (6th Cir. July 25, 2023) (no *Bivens* claim against local law enforcement officer temporarily deputized as a member of a federal fugitive-apprehension task force attempting to execute a warrant); *see Orellana*, 145 F.4th at 525 (no *Bivens* claim against Marshals Service task force members acting under a warrant); *Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1358 (10th Cir. 2024) (no *Bivens* claim against federal task force officers executing state court warrant). Given that arrests pursuant to a warrant—unlike on-the-spot arrests like those in *Bivens*—generally happen pursuant to a plan, allowing a damages remedy for excessive-force claims in executing an arrest warrant could potentially disrupt law-enforcement efforts to plan warrant execution, and the threat of damages liability

might affect decisions about how to plan and staff such efforts. Such systemwide consequences go beyond the judicial intrusion on the "legislative endeavor" of "creating a cause of action" already authorized by *Bivens* in the context of warrantless searches. The panel majority erred in failing to recognize as much.

### B. Effectuating an Arrest in a Public Parking Lot Presents a New Context from the Search and Arrest in the Plaintiff's Home in *Bivens*.

An arrest in a public place involves meaningfully different separation-of-powers considerations than an arrest in a private home. The panel majority erred in concluding otherwise. *See* Majority 25-28.

*Bivens* itself addressed an arrest in a private home, not a routine arrest in a shopping center parking lot or any other public place. The panel majority acknowledged that "the place where an alleged Fourth Amendment violation occurs can be a meaningful difference," but it reasoned that the parking-lot location here "does not trigger the kind of acute separation of powers concerns that made the 'cross-border' context" meaningfully different in *Hernandez.* Majority 25.[2] While it is true that a search or arrest at the border presents different concerns than an arrest in a suspect's home, it does not follow that an arrest in a suspect's home presents the

---

[2] Even on its own terms, the majority's discussion of *Hernandez* misstates the relevant standard, looking for "*acute* separation of powers concerns," Majority 25 (emphasis added), rather than trying to determining "whether there is *any* rational reason (even one) to think that *Congress* is better suited to" decide whether to permit a damages action to proceed, *Egbert*, 596 U.S. at 496.

same separation-of-powers concerns as an arrest in a public parking lot.  And the majority's observation that heightened privacy interests in the home are relevant to the invasions of privacy at issue during an unlawful search, Majority 27, is equally nonresponsive to the question at hand: whether excessive-force claims arising from officer conduct in homes versus public locations are sufficiently similar that the existing *Bivens* remedy encompasses both.

Properly viewed, the differences between private homes and public places are significant in excessive-force claims, just as the majority conceded they are in the search context.  *See* Majority 27.  As Judge Lynch observed in dissent, excessive-force claims require courts to consider "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Dissent 64 (quoting *Graham*, 490 U.S. at 396 (noting the need for "careful attention to the facts and circumstances of each particular case" in assessing the reasonableness of force used in a Fourth Amendment seizure)).  In the parking lot of a shopping mall, "[b]oth in effecting the arrest and in preventing any attempts by Arias to speed away to avoid arrest, the law enforcement officers had to account for the real dangers which were posed to" the other people in the area, considerations distinct from those when effectuating an arrest within the confines of a home.  Dissent 64-65 (citing *Bannon v. Godin*, 99 F.4th 63, 79-83 (1st Cir. 2024), for the proposition that "reasonableness of force must be assessed in light of threat to officer and members of the public").  Such practical distinctions mean that

"Congress could readily conclude arrests without warrant in the sanctity of the home are greater invasions of Fourth Amendment protections," and more appropriate fodder for damages suits against individual officers, "than attempts by law enforcement to effectuate arrest warrants in busy public mall parking lots," where the threat of such liability might chill officers' discharge of their responsibilities to safeguard members of the public while carrying out arrests.  Dissent 66.  The majority's decision fails to account for these important distinctions, wrongly disregarding Congress's prerogative to consider the attendant policy choices to be made before extending individual damages liability to arrests conducted in public places.

* * *

Either the warrant or the public location of the arrest would alone be sufficient to satisfy the new-context inquiry, but taken together, it is clear that plaintiff's novel claims arise in a new context.  And once the novelty of the context here is acknowledged, multiple special factors preclude the extension of *Bivens* plaintiff seeks, including the existence of alternative remedies via misconduct complaints to the Office of Inspector General.  *See Egbert*, 596 U.S. at 498 (similar scheme was sufficient to preclude novel extension of *Bivens*); Majority 44 (appearing to acknowledge that the Inspector General Act qualified as a special factor).

II.     **The Majority's Expansion of *Bivens* Warrants Rehearing En Banc.**

The majority's mistaken view of expansive individual liability under *Bivens* warrants en banc review for multiple reasons.

A. En banc review is warranted given the conflict between the majority's decision and the Supreme Court's decisions in *Abbasi*, *Hernandez*, and *Egbert*, as well as the decisions of other courts of appeals.

1. As noted above, the majority opined that an arrest in a public place pursuant to a warrant is not materially different from *Bivens* itself.  That view cannot be reconciled with the Supreme Court's instructions.  In *Egbert*, facts at issue "involve[d] similar allegations of excessive force and thus arguably present[ed] 'almost parallel circumstances' [to *Bivens*]," but the Court held that "these superficial similarities [we]re not enough to support the judicial creation of a cause of action."  596 U.S. at 495 (quoting *Abbasi*, 582 U.S. at 139); *see Hernandez*, 589 U.S. at 103.  Plaintiff's excessive-force claims resemble those in *Egbert*, differing from those in *Bivens* by location; indeed, the presence of a warrant here makes this an even clearer case of a new context than was *Egbert*.  This Court should grant rehearing en banc to bring its precedent in line with the Supreme Court's approach to applying—and limiting—*Bivens*.

2. The majority's decision concededly "conflicts with … authoritative decision[s] of another United States court of appeals," Fed. R. App. P. 40(b)(2)(C), deepening the division in the circuits about the new-context inquiry for Fourth

Amendment claims.  First, as the dissent noted, the Fourth and Fifth Circuits "have held that the existence of a warrant amounts to a meaningful difference from *Bivens* in Fourth Amendment claims."  Dissent 66-67 (first citing *Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021); and then citing *Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019)); *see also Cain*, 2023 WL 6439438, at *3; *Quinones-Pimentel v. Cannon*, 85 F.4th 63, 71-2 (1st Cir. 2023) (invoking the issuance of a warrant, among other distinctions, to find a new context).  And since the decision in this case, the Fourth Circuit has made the circuit conflict even clearer, holding that the presence of an arrest warrant is "enough" to establish a new context with respect to the plaintiff's excessive-force claims during an arrest in her home and reiterating that the "'Fourth Amendment sharply distinguishes between with-warrant and warrantless searches, treating the introduction of the warrant as a signal moment in the proceedings.'"  *Orellana*, 145 F.4th at 525 (quoting *Annappareddy*, 996 F.3d at 135-36).

While several other circuits have diverged on this score, that does not alter that the majority's analysis directly conflicts with the holdings of several circuits, thus satisfying the en banc criteria.  And the Seventh Circuit's refusal to recognize a warrant as a distinguishing factor was based on little reasoning.  *See Snowden*, 72 F.4th at 239 (Fourth Amendment excessive-force claim against a DEA agent who allegedly pushed the plaintiff to the ground and punched him in the face while executing a warrant for his arrest in a hotel lobby); *see also Logsdon*, 91 F.4th at 1357 (giving "little weight" to the fact that officers were executing an arrest warrant in evaluating an

excessive-force claim while acknowledging "substantial authority to the contrary," but ultimately finding a new context based on other distinctions from *Bivens*).

Next, the majority's rejection of the location of the arrest as a new-context distinction places it at odds with the Fifth and Ninth Circuits. *See Mejia*, 61 F.4th at 668 (Ninth Circuit, reasoning "unlike *Bivens*, none of the events in question occurred in or near Mejia's home"); *Byrd*, 990 F.3d at 882 (Fifth Circuit, concluding that "Byrd's lawsuit differs from *Bivens* in several meaningful ways. This case arose in a parking lot, not a private home as was the case in *Bivens*." (citing *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (arrest in a public hospital, not a private home)). As with warrant-based distinctions, this aspect of the majority's opinion cannot be reconciled with these courts' reasoning, warranting en banc review. And the courts of appeals that have concluded that a public arrest presents the same context as *Bivens* have failed to grapple with the public policy considerations that might lead Congress to craft different remedial schemes. *See Hicks v. Ferreyra*, 64 F.4th 156, 162 (4th Cir. 2023) (search on public road no different from *Bivens*); *Snowden*, 72 F.4th at 247 (hotel-lobby arrest no different than *Bivens*); *Logsdon*, 91 F.4th at 1357 (Tenth Circuit, agreeing that location of arrest outside of a friend's home had "no legal significance in an excessive force case," but finding other new-context distinctions).

B. The majority's decision also presents a question of exceptional importance, requiring en banc review. First, the decision disrupts the separation of powers. The Supreme Court has directed courts to consider whether a claim arises in an existing

*Bivens* context in order to prevent further judicial encroachment on legislative prerogatives. *See Abbasi*, 582 U.S. at 140 (questions on whether to extend a damages remedy are for Congress, not the courts). While the courts continue to adjudicate *Bivens* claims in recognized contexts, *see id.* at 135 (declining to overrule *Bivens*), they are also responsible for ensuring an appropriate separation of powers going forward by recognizing when permitting an implied individual damages action to go forward would extend *Bivens* in even a modest way. *See Egbert*, 596 U.S. at 497 n.3 ("Because recognizing a *Bivens* cause of action is an extraordinary act that places great stress on the separation of powers, we have a concomitant responsibility to evaluate any grounds that counsel against *Bivens* relief." (citation and quotation marks omitted)). The majority's expansion of *Bivens* fails to heed these important separation-of-powers principles and should be revisited en banc.

Second, the decision disregards important law-enforcement interests in the execution of arrest warrants in public places. As noted, damages liability in the execution of arrest warrants could affect cooperation among law enforcement partners, as well as impact the planning and coordination involved in such efforts. Furthermore, the potential costs and consequences of recognizing a *Bivens* action for Fourth Amendment excessive-force claims arising in public places implicate serious policy considerations, raising the specter of chilling efforts or creating hesitation in executing arrest warrants in public places, where the safety of bystanders is an issue. Dissent 64-66. Extending a *Bivens* remedy to this context would create "the risk that

fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Egbert*, 596 U.S. at 499 (quotation marks omitted).

## CONCLUSION

For the foregoing reasons, this Court should grant rehearing en banc.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIN CREEGAN
  *United States Attorney*

MELISSA N. PATTERSON
JAYNIE LILLEY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7321*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3542*

December 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,877 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

<div style="margin-left:50%">

*s/ Jaynie Lilley*
Jaynie Lilley

</div>